

FILED

JAN - 7 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*

*NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 04-28375-D-13L |
| | Docket Control No. FWP-1 |
| KEVIN HEALY, | |
| Debtor. | |

## MEMORANDUM DECISION

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

On April 28, 2005, the chapter 13 trustee in this case, Lawrence J. Loheit ("the Trustee") filed his Final Report and Account ("the Report"). On May 31, 2005, the debtor, Kevin M. Healy ("Healy"), filed his Notice of Objection to Disbursement of Attorneys Fees; Request for Hearing (the "Objection"), in which he objected to the Report "to the extent that it allows any fees to attorney Peter G. Macaluso, Esq." Following briefing and oral argument, the court approved the Report, and Healy appealed. On August 22, 2006, the Ninth Circuit Bankruptcy Appellate Panel vacated the order approving the Report and remanded the matter for further findings consistent with its decision. The parties have now further briefed and argued the issues, and the court has conducted an evidentiary hearing at which Healy and Peter G. Macaluso ("Macaluso") testified.

/ / /

For the reasons set forth below, the court will sustain the Objection, and order that Macaluso return to Healy the full amount of attorney's fees he received for his services in this case, $1,210. Healy's specific challenge to the Report was to the payment by the Trustee to Macaluso of $710 as attorney's fees. However, prior to the commencement of the case, Healy had paid Macaluso $500 as a retainer. Based on the comments of the Bankruptcy Appellate Panel in its decision remanding the matter (see page 6 below), the court concludes that the $500 payment should stand or fall with the Trustee's $710 payment.[1]

## I. INTRODUCTION

Healy is an attorney at law, so licensed in California and Washington, practicing in the areas of military law, aviation matters, "civil law," family law, and personal injury, according to his website, www.healy-law.com.

On August 16, 2004, Healy, then represented by Macaluso, filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing this case.[2] On January 5, 2005, the court granted the Trustee's motion to dismiss the case on the ground that Healy's unsecured debt exceeded the limit for chapter 13 eligibility fixed by 11 U.S.C. § 109(e), $307,675.

///

---

1.  Macaluso acknowledged in his response filed May 4, 2007, at 1:20-21, that the amount at issue in this matter is $1,210.

2.  Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

Healy then challenged the Trustee's Report, and in particular, the Trustee's payment of $710 to Macaluso as attorney's fees incurred in the case. The court approved the Report over Healy's objection, but the order was vacated on appeal.

Following remand, Macaluso filed a motion to set the matter for further proceedings, pursuant to Local Bankruptcy Rule 8020-1. The court took Macaluso's motion as a motion for approval of attorney's fees, as required by paragraph 3 of the court's Guidelines for Payment of Attorneys' Fees in Chapter 13 Cases (Effective July 1, 2003). On February 9, 2007, the court issued an order fixing deadlines for the filing of supplemental briefs and evidence.

On February 20, 2007, Healy filed a motion to extend the briefing schedule. The court granted Healy's motion, and on February 27, issued an amended order, extending by six weeks each the deadlines for Healy and Macaluso to file their briefs and evidence.

Healy filed no further motion to extend the briefing schedule or to modify the amended scheduling order. Then, on April 23, 2007, the first business day after his deadline had passed, Healy filed a "Preliminary Notice of Objections and Further Evidence for Opposition to Attorney Fees on Issues on Remand," in which he complained that a lack of cooperation on the part of Macaluso and his counsel, together with Healy's military duties and family health issues, had prevented him from conducting the discovery he needed. On May 5, 2007, after the deadline for Macaluso to file his brief and evidence had passed,

and the evidentiary record thus had closed, Healy served on Macaluso a subpoena for his deposition and for the production of documents.

Macaluso responded with a motion to quash the subpoena and for an award of costs in the amount of $1,380, increased to $2,640 by the time Macaluso's reply was filed. Following briefing and a hearing, the court quashed the subpoena and continued the hearing as to Macaluso's request for an award of costs to August 23, 2007.[3] The court continued the hearing on the Objection to the same date and time. On August 22, the day before the hearing, Healy submitted a request for a further continuance, which the court granted, continuing both hearings to September 26. On September 24, Healy filed a motion for another continuance, which the court granted, continuing the hearings to November 14.

On November 14, 2007, having determined that the declarations of Macaluso and Healy thus far submitted were factually at odds with one another, the court set an evidentiary hearing for December 10, 2007, for the limited purpose of taking testimony as to what advice Macaluso had given Healy before the filing of the petition commencing this case, and in particular, as to what Macaluso had told Healy about the requirements for chapter 13 eligibility, the effect of the automatic stay on pending state court proceedings, and the ability to have certain

///

---

3. The court's findings and conclusions supporting the decision to quash the subpoena were read into the record at a June 12, 2007 hearing.

- 4 -

state court claims determined in adversary proceedings in the bankruptcy court.

The court required Healy and Macaluso to file direct testimony declarations and exhibits in accordance with Local Bankruptcy Rule 9017-1. Both submitted declarations, Healy submitted exhibits, and an evidentiary hearing was held on December 10, 2007, at which Healy and Macaluso testified and were cross-examined. The court was not impressed with the candor or credibility of either party. Macaluso had clear recall at times, when it was self-serving, and at other times, his recall was poor. However, as between the two, the court found Healy to be the less credible and less forthcoming. In particular, the court found Healy to be very evasive, unresponsive, coy, and contentious in his testimony.

Healy challenges the attorney's fees paid to Macaluso on several grounds, among them that Macaluso had improperly counseled Healy that he qualified for chapter 13 relief when he did not.[4] Macaluso responds that Healy may in fact have qualified for chapter 13 relief. Macaluso also contends that even if Healy did not qualify, the petition was filed on an emergency basis, Healy understood the requirements for and ramifications of a chapter 13 filing, and on that basis, made the decision to proceed with the filing, the failure of the chapter 13 case was Healy's fault, and the work Macaluso performed in the case was worth the amount of fees he received and then some.

---

4. Because the court's decision concerning Macaluso's handling of the eligibility issue is dispositive of the Objection, there is no need to consider the other issues raised by Healy.

II. ANALYSIS

A bankruptcy court awards attorney's fees for services rendered in a bankruptcy case pursuant to § 330(a). The allowance of fees and costs to a chapter 13 debtor's attorney is "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." § 330(a)(4)(B). The court must consider, among other things, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title . . . ." § 330(a)(3)(C).

> [S]ervices that are reasonably likely to provide an identifiable, tangible and material benefit to the debtor's estate can be compensated, even if they do not actually provide such a benefit (and as long as such services meet the other requirements of section 330(a)).

Smith v. Edwards & Hale (In re Smith), 317 F.3d 918, 926 (9th Cir. 2002).

Macaluso has the burden of proof as to his entitlement to attorney's fees. Law Offices of David A. Boone v. Derham-Burk (In re Eliapo), 298 B.R. 392, 402 (9th Cir. BAP 2003); Hale v. United States Trustee (In re Basham), 208 B.R. 926, 931-32 (9th Cir. BAP 1997).

On Healy's appeal in this matter, the Bankruptcy Appellate Panel determined that "if it turns out that Macaluso negligently counseled [Healy] to file a bankruptcy case for which he was clearly ineligible, all of the fees incurred in connection with the ill-advised chapter 13 case might be rendered unreasonable under § 330(a)." Healy v. Macaluso (In re Healy), BAP No. EC-05-

1396-SBMo, Memorandum filed August 22, 2006, at 13. The court will therefore examine, first, whether Healy was ineligible for chapter 13 relief when this case was commenced, and if so, whether Macaluso improperly counseled him to file anyway, or alternatively, failed to sufficiently inform Healy of the eligibility issue.

If these questions are answered in the affirmative, the court may order the disgorgement of all fees received by Macaluso in connection the case. § 329(b); Rule 2017(a) and (b).

A.  Whether Healy qualified for chapter 13 relief

At the time Healy's petition was filed, only an individual who owed noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 was eligible for chapter 13 relief. § 109(e).[5] Whether a debtor is eligible under these tests "should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 982 (9th Cir. 2001).

Thus, the court looks to Healy's originally filed schedules. Healy's F-schedule, filed with his petition on August 16, 2004, showed $264,128.82 in noncontingent, liquidated, unsecured debts. His D-schedule showed $271,721.67 in noncontingent, liquidated secured debts, of which $72,683 was the total of the unsecured portions of two debts owed to Healy's mother, Teryl Dayton Healy. Thus, the original schedules showed a total of $336,811.82 in

---

    5. Pursuant to § 104(b), these figures are adjusted every three years.

noncontingent, liquidated, unsecured debts,[6] more than the $307,675 limit under § 109(e). On their face, then, Healy's originally filed schedules indicated Healy was not eligible for chapter 13 relief.

Macaluso argues that he "[does] not believe that the debt limits of section 109 were exceeded, as the potential debts to the anti-SLAPP creditors were contingent and/or unliquidated, as reflected in the amended schedules filed in this case." Alternate Direct Testimony of Peter G. Macaluso ("Macaluso ADT"), ¶ 11.

The "anti-SLAPP creditors" to whom Macaluso refers are Charles E. Bauer and Cynthia Rose. In separate Sacramento County Superior Court actions, the court had granted Bauer's and Rose's special motions to strike Healy's complaints against them, under California Code of Civil Procedure § 425.16, each as a "strategic lawsuit against public participation," known as an anti-SLAPP motion. Bauer and Rose then filed motions for awards of attorney's fees and costs against Healy, Bauer in the amount of $39,055 and Rose in the amount of $6,703.80.

On October 12, 2004, five days after the meeting of creditors in the bankruptcy case, Healy filed an amended F-schedule, in which he characterized the debt to Bauer as unliquidated, whereas it had been listed as liquidated in the

/ / /
/ / /
/ / /

---

6. Undersecured portions of secured debts count as unsecured for the § 109(e) eligibility test. <u>Scovis</u>, 249 F.3d at 983.

original schedule.[7] He also added a new creditor, Rose,[8] out of an "abundance of caution," at $1.00, also unliquidated.[9] By way of the amended schedule, then, Healy attempted to take these debts out of the calculation, thereby bringing his unsecured debt total below the limit for eligibility purposes, $307,675.[10]

Macaluso contends that this amendment rendered Healy eligible for chapter 13. By contrast, under Scovis, absent a challenge to a debtor's good faith in filing the schedules, the court should look to the originally filed schedules. Although there were two objections to the confirmation of Healy's chapter 13 plan, one by the Trustee and one by Bauer, neither suggested that the original schedules were not filed in good faith. Thus, the court finds those schedules to be dispositive of the issue.

However, even if the amended schedules were to be considered, the outcome would be the same, because the court finds the Bauer and Rose debts to be liquidated and noncontingent for purposes of the § 109(e) test. In the Ninth Circuit, "a debt is liquidated for the purposes of calculating eligibility for

---

7. The debt was listed in the amended schedule as a debt to the law firm of Murphy, Pearson, Bradley & Feeney, Bauer's attorneys.

8. The debt to Rose was listed as a debt to the Law Office of Stephanie J. Finelli, Rose's attorney.

9. Healy also listed these debts, and a third, as disputed as well as unliquidated. The characterization of the debts as disputed does not help Healy, however, if the debts were liquidated and noncontingent. See Slack v. Wilshire Ins. Co. (In re Slack), 187 F.3d 1070, 1073-75 (9th Cir. 1999); and see discussion below.

10. Healy also changed the characterization of a third debt, to Thompson [Thomson] West Publishing, $10,341.70, to unliquidated. The net effect of the amendment was to reduce to $286,470.12 the total of the noncontingent, liquidated, unsecured debts.

relief under § 109(e) if the amount of the debt is readily determinable." Slack v. Wilshire Ins. Co. (In re Slack), 187 F.3d 1070, 1073 (9th Cir. 1999).

Whether a debt is readily determinable, in turn, depends on "whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor." Id. at 1074. "The definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." In re Wenberg, 94 B.R. 631, 634 (9th Cir. BAP 1988).

"[T]he mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e)." Slack, 187 F.3d at 1074. In short, in the Ninth Circuit, "a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided." Ibid.

The Bauer and Rose debts were on account of attorney's fees and costs incurred by them in connection with their anti-SLAPP motions. Attorney's fee claims are determined by both state courts and bankruptcy courts on a regular basis. In the Wenberg case, supra, the bankruptcy court, in a "not overly extensive" hearing, was able to determine the amount of attorney's fees and costs incurred in underlying litigation, and on that basis, the Ninth Circuit Bankruptcy Appellate Panel affirmed the court's conclusion that the claim for fees was "subject to ready

determination." 94 B.R. at 635. The Court of Appeals affirmed. In re Wenberg, 902 F.2d 768 (9th Cir. 1990). Similarly, this court concludes that determination of the amounts of the Bauer and Rose debts would be relatively simple, and thus, that the debts were readily ascertainable, and therefore liquidated.

The debts were also noncontingent. "[A] debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." Nicholes v. Johnny Appleseed (In re Nicholes), 184 B.R. 82, 88 (9th Cir. BAP 1995). By contrast, "[a] contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" Id. quoting In re Fostvedt, 823 F.2d 305, 306 (9th Cir. 1987). "[T]he fact that a claim has not been reduced to judgment does not render it contingent." Id. citing In re Dill, 30 B.R. 546, 549 (9th Cir. BAP 1983).

In this instance, the anti-SLAPP motions had been filed and determined, and Bauer's and Rose's attorney's fees and costs for those motions had been incurred prior to the filing of Healy's bankruptcy petition. There remained no other event necessary to trigger liability on Healy's part. The fact that one or both fee motions had not yet been ruled on by the state court is irrelevant (Nicholes, 184 B.R. at 88), as is the fact that Healy disputed the claims. "[E]ven a bona fide dispute over liability for a claim does not make the debt contingent." Id. at 89.

/ / /

/ / /

The Bauer and Rose debts were therefore liquidated and noncontingent, and were appropriately included in the § 109(e) calculation, regardless of the fact that Healy disputed them.

Adding these two debts, $6,703.80 to Rose and $39,055 to Bauer, to the $286,470.12 remaining after the filing of the amended F-schedule brings the total of Healy's noncontingent, liquidated, unsecured debt to $332,228.92. Thus, Healy exceeded the § 109(e) limit unless Healy's debts to his mother somehow changed the equation.

It appears Macaluso recognized the possibility that the bifurcation of Healy's mother's claims might alter the outcome. The correspondence between Healy and Macaluso after the objections to confirmation had been filed suggests that Macaluso at least attempted to obtain additional information from Healy that might support the theory that the undersecured portions of his mother's claims might actually be less than originally scheduled. However, no further evidence to support this theory was ever submitted, so the court is left with the conclusion that the total of Healy's noncontingent, liquidated, unsecured debt in fact rendered him ineligible for chapter 13 relief, whether one considers only the original schedules or the amended F-schedule.[11]

B. Whether Macaluso properly advised Healy

Having rejected Macaluso's argument that Healy was in fact eligible to be a chapter 13 debtor, the court must consider

---

11. The court does not mean to suggest that an amendment to the D- and F-schedules might have salvaged the case. As the court has already concluded, under Scovis, as the original schedules were apparently filed in good faith, they were determinative of the eligibility issue.

whether Macaluso advised Healy in this regard. Macaluso's testimony is that he "does not recall that any issues arose or what we discussed regarding the debt limits," and that up until the time of their in-person meeting the evening the petition was filed, "no issues arose which gave a reason to discuss the debt limits of chapter 13, and the debt limits were not specifically discussed." Macaluso ADT, ¶¶ 9, 50. There is no evidence that the issue was discussed at all prior to the filing of the petition.

Macaluso testified that several other issues were extensively discussed, including the liquidation analysis, feasibility, disposable income, preferences, insider transactions, the automatic stay, and the possibility of conversion, dismissal, and/or refiling. However, there is no evidence that the § 109(e) debt limits were discussed. Thus, Macaluso has not submitted evidence that his advice to Healy was sufficient to reasonably apprise Healy that his case might face dismissal because of the debt limits, so that Healy could make an informed decision whether to proceed. Macaluso contends that Healy caused the petition to be filed "knowingly, voluntarily and intelligently." Regardless, debtor's counsel has a duty to assess eligibility before a chapter 13 is filed, and to advise the client if there are eligibility issues. There is no evidence that this was done.

The court recognizes that Healy gave Macaluso a relatively short period of time in which to prepare for the bankruptcy
/ / /
/ / /

filing, a period of between one and two weeks.[12]  The court acknowledges Healy's apparent determination to use a bankruptcy filing to avoid a state court filing deadline he perceived as unfair and in violation of federal law.  The court also recognizes that, in pushing to file the bankruptcy petition before that deadline, Healy may have pressured Macaluso to file without the detailed financial information and documentation Macaluso would have preferred to have.

Nevertheless, the debt limits are a fundamental test of a debtor's eligibility for chapter 13 relief, and therefore, should be addressed prior to any chapter 13 filing.  Macaluso should have addressed the issue specifically with Healy, and should have cautioned him that the case stood to be dismissed if Healy in fact exceeded the debt limits.  There is no evidence that Macaluso took these steps.

Macaluso testified he believes Healy would have filed the petition even if he had known he faced a challenge based on the debt limits.  Macaluso points to Healy's filing in one of the state court actions of a Notice of Stay Due to Bankruptcy Filing even before the bankruptcy petition was filed and before Macaluso and Healy had their in-person meeting.  Macaluso concludes that Healy "had made the decision to file his bankruptcy prior to meeting with [Macaluso] that day."  Macaluso ADT, at ¶ 60.

---

12.  The court gives no credit to Healy's argument that Macaluso had known of Healy's interest in a bankruptcy filing for about a year.  As an attorney himself, Healy is undoubtedly aware that prospective clients often do not return after an initial consultation.  Macaluso cannot have been expected to concern himself with Healy's financial situation before Healy contacted him on or about August 7, 2004.

. It may be that Healy had already made up his mind to proceed with the chapter 13 filing. It is also possible he would have proceeded even if he had known of the potential § 109(e) challenge, based on the need to beat the state court filing deadline.[13] The court need not reach this issue, however, because the key question is whether Macaluso provided Healy with sufficient information regarding the eligibility issue to make an informed decision. The court concludes that he did not.

Macaluso also testifies that he recommended Healy "thoroughly research the law in this field [bankruptcy]," and that he asked Healy "to review the Bankruptcy Code." Macaluso ADT, at ¶¶ 16, 19. At the time of the bankruptcy filing, Macaluso assumed Healy had "complied with [his] request to review bankruptcy law from the time [they] originally spoke a year before," and based on that assumption, he believed Healy "knew what he was doing knowingly, voluntarily, and intelligently." Id. at ¶ 29.

First, the fact that a client is himself an attorney in no way excuses or lessens an attorney's duties to the client. Further, the complexity of bankruptcy law is such that, even with a year to conduct research, it is not reasonable to expect a non-bankruptcy attorney to be fully versed on the requirements for and ramifications of a chapter 13 filing. More important, the analysis of applicable bankruptcy law is the duty of the debtor's

---

13. The court notes that a debtor's ineligibility under § 109(e) is not jurisdictional (Wenberg, 94 B.R. at 637), and thus, this case might have proceeded despite Healy's ineligibility if the Trustee and creditors had not objected. Thus, the court rejects Healy's repeated characterization of the chapter 13 filing as "illegal."

- 15 -

counsel, not the debtor. Both the disclosure required by Rule 2016(b) and this court's Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys recognize debtor's counsel's duty to assess the debtor's financial situation.[14] In short, it is no excuse that Healy should have discovered the § 109(e) issue on his own.

Macaluso's attempt to shift the blame to his bankruptcy filing software is flawed for similar reasons. A computer program that "red-flags" cases with debts exceeding the § 109(e) limits may be a useful tool; it cannot replace the attorney's duties to his or her client.

Finally, Macaluso points to his and Healy's respective military backgrounds, that Healy was "an Active Naval JAG Officer," whereas Macaluso was "an enlisted marine." "I do not question officers' decisions, especially a Naval JAG Officer and seasoned litigator with regard to military justice." Macaluso ADT, ¶ 13. Obviously, the parties' roles in this proceeding were not as military personnel, but as attorney and client. This testimony, therefore, does not excuse Macaluso's failure to properly advise his client.

It is clear Macaluso felt pressured to file a chapter 13 for Healy, and Healy did certain things that made him uncomfortable.

---

14. The Rule 2016(b) disclosure acknowledges that in return for his or her fee, the debtor's counsel agrees to provide "an analysis of the debtor's financial situation, and . . . advice to the debtor in determining whether to file a petition in bankruptcy . . . ." The Rights and Responsibilities acknowledges that debtor's counsel is to "meet with the debtor to review the debtor's debts, assets, liabilities, income, and expenses," and to "counsel the debtor regarding the advisability of filing either a Chapter 7 or Chapter 13 case, discuss both procedures with the debtor, and answer the debtor's questions." Both these documents were filed in this case.

However, Macaluso's response should have been to decline representation. Once Macaluso accepted representation, he was duty bound to provide services at the requisite level of care and competency.

In short, an attorney preparing to file a chapter 13 petition for a client must explore the issue of the debt limits, explaining the ramifications and possible means to overcome such a challenge, if any, and then, to the extent a filing would not violate applicable ethical rules, allow the client to make the decision whether to proceed. That did not happen here.

It was clear from the schedules filed with the chapter 13 petition that Healy was not eligible for chapter 13 relief, and the case was dismissed for this reason. As a result, the court finds Macaluso's services were not necessary to the administration of the case, nor were Macaluso's services beneficial at the time at which the services were rendered toward a completion of the case. The court concludes that Macaluso has not met his burden of proving his entitlement to attorney's fees for his services performed in and in contemplation of this case.

### III. CONCLUSION

The court therefore concludes that, although the services performed by Macaluso may have been worth well over $1,210 when considered in a vacuum, as eligibility was not discussed, and the case was ultimately dismissed based on Healy's ineligibility, such services were not necessary and beneficial to Healy as the debtor in the case. The court notes that services may be compensable if they were reasonably likely to be necessary and beneficial when rendered, even if the case turns out to be

unsuccessful. <u>Smith</u>, 317 F.3d at 926.  Thus, had Macaluso fully explored the § 109(e) issues with Healy prior to the filing, and had Healy made the decision to proceed anyway, the court would likely find Macaluso entitled to compensation notwithstanding that the case was dismissed on § 109(e) grounds.  Because Macaluso did not take this step, however, he is not entitled to compensation, and the court will direct him to return to Healy the $1,210 he received as compensation for the case.

The court will issue an order consistent with this memorandum.

Dated: January 8, 2008

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

Case 04-28375　Filed 01/07/08　Doc 257

# CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document on today's date to each of the parties listed below:

Office of the US Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1852

Kevin Healy
1405 G Street
Sacramento, CA 95814

Peter Macaluso
910 Florin Road, #111
Sacramento, CA 95831-5259

Paul Pascuzzi
Felderstein Fitzgerald Willoughby & Pascuzzi
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

DATE: JAN - 7 2008

_____
Deputy Clerk